the case of Robert Dexter Weir and others v. the United States. Good morning, speaking for myself it's very nice to be back in the courtroom. May it please the court, Patrick Petroselli for petitioners. The statute of conviction at issue here criminalizes the making of false statements about a vessel's destination during a boarding. That's it. If the decision below is affirmed on the strength of the false statement alone, the government can take foreign nationals on the high seas into custody. It can detain them at sea for weeks. And it can deliver them to the United States for prosecution. No criminal activity needs to be occurring on board the vessel and the vessel and its connection to the United States. Such an expansive view of the United States power to criminalize extraterritorial conduct is unprecedented. This court should place limits on that view and vacate petitioner's convictions for two reasons. Taking petitioner's due process challenge first. There's no question that the due process clause requires fundamental fairness. And for 35 years since the Gonzalez case, this court has held that when dealing with foreign nationals engaged in extraterritorial conduct, the primary method of determining fundamental fairness for purposes of the due process clause is to assess whether the conduct at issue is contrary to the laws of all reasonably developed legal systems. The making of false statements about a vessel's destination during a boarding does not satisfy that standard. It's a bespoke crime that's unique to the United States. Counsel, what do we make of Bastin where we specifically said that to determine whether an exercise of extraterritorial jurisdiction satisfies due process, due process requires only that an exercise of extraterritorial jurisdiction, I'm having trouble with that today, not be arbitrary or fundamentally unfair, a question of domestic law, and that compliance with international law is not necessary to satisfy due process. Thank you, Judge. We certainly don't suggest that the test from Gonzalez is the only way that you can satisfy due process. There are a few other ways. Do you agree that the territorial principle is one of those ways? I do agree that the territorial principle is one of those ways. Why would that not apply here? Well, the territorial principle, first of all, I might have misspoke. I don't think that the mere consent of a foreign nation under the territorial principle is enough to satisfy due process. If that's one of the established, if international law is a potential possibility for getting to due process, and if the territorial principle is a well-established one, assuming it's met, and I know there's some dispute about that, but assuming it's met, why would that not meet the constitutional minimum of due process? The due process clause is an individual right. We think that it is an odd thing to suggest that a foreign government that consents to a prosecution, in this case, it was several weeks after the false statement was made, somehow satisfy the individual petitioners here. That gets to the facts. I want you to stop. Don't focus on the facts for the moment. In general, in the hypothetical, could meeting the territorial principle establish the constitutional minimum of due process? I don't believe with a crime like a false statement crime, where the crime is complete as of the moment the false statement has been made. Why would that be, though, where, why would the crime matter when the territorial principle's concept is if you can consent to the exercise of jurisdiction by the United States and its laws? I've never seen any case, and please point me to one, that limits it to the type of crime. I would direct your honor to the Gonzales case, and there, you had a situation like here where the defendants in Gonzales were on a foreign flagged vessel. The foreign state gave consent for the prosecution there, and in assessing the due process challenge, the court still inquired into the actual nature of the underlying crime there, drug trafficking, and that's where the reasonably developed legal system test comes from. So it wasn't enough. But the court didn't apply the territorial principle in that case. No, but the court did consider the fact in addressing the defendant's due process challenge that Honduras had consented to the prosecution. It called the consent there a legislative grace. It was quite clear that it wasn't using consent as a proxy for fundamental fairness, which is, I think, how... But I guess my question is, counsel, where you're not using the protective principle or the universal principle, which are other independent principles of international law, where you're solely going on the territorial principle, why is that, again, assuming the facts that it meets those requirements, why is that not, in and of itself, sufficient for due process purposes? Because due process is an individual right, and I don't believe there is any other context where the individual's right to due process can be satisfied as a result of a foreign nation giving its consent to a prosecution. The question for fundamental fairness is one, is it fundamentally fair for the petitioners here, the defendants, to be convicted of a federal crime, and it's difficult to conceive of a notion where a foreign nation's consent can meet that fundamental fairness. It doesn't give the petitioners any knowledge or any notice that they're being subject to... My concern is this, counsel, that if we go down that path, if we agree with you, we'd be essentially saying that meeting the requirements of the territorial principle, again, assuming they're met in this case, and I know that there's some discussion about that, but assuming that's met, we'd be reading that out of international law principles as meeting it, and that seems inconsistent with what we've said in other cases. For instance, in Ibarguen, Mascara, I'm sure I'm butchering that name, we've said, quote, in determining whether an extraterritorial lawsuit, I messed it up again, comports with due process, appellate courts often consult international principles, same thing we said in Bastin, such as the objective principle, the protective principle, or the territorial principle, and then we cited favorably to Suerte and Cardales, which also applied those concepts. I would direct your honor to our discussion of Suerte and Cardales in our brief, and I believe that the courts in those cases are quite clear that it is looking to not only the fact that the foreign nations gave consent, but it also inquires into the underlying conduct, and it asks whether this decision, the conduct at issue, is criminalized by all reasonably developed legal systems, the same test that this court applied in Gonzales. I guess that's what I'm getting tripped over on, because it doesn't seem that that's the test, that is one test for meeting it, without a doubt, under the universal principle, and arguably under the protective principle, that is a factor. But there are separate and independent concepts of international law, like the passive protective principle and the objective principle, that have nothing to do with that particular test that we've also said, if met, can meet the constitutional minimums of due process, because they meet international law. I would invite your honor to a case from the Third Circuit, that's one of the jurisdictions that I think your honor mentioned, one of those cases is from the Third Circuit, it's the case Martinez-Hidalgo, 993F2D1052, and in that case, the Third Circuit specifically acknowledged that they weren't saying that there might not be a due process problem if Congress provided for extraterritorial application of U.S. conduct, of U.S. law to conduct on the high seas, without regard to a domestic nexus, if the conduct is not generally unlawful throughout the world. And so I do think there is a notion in all of these cases, underlying all of these cases, even where courts have relied on a foreign nation's consent, to say, what is the underlying conduct? Because again, the main driver of due process is fundamental fairness. Can I ask you something, just backing up a little bit? For quorum nobis, is it a jurisdictional requirement that we meet the test set out in Peter and that the error renders the proceeding itself irregular and invalid? Are those jurisdictional requirements? The quorum, yes, we do believe that the challenges that we're making here are jurisdictional requirements. No, no, I know you're arguing about the court's jurisdiction, I'm talking about to meet, to have subject matter jurisdiction for quorum nobis, are you required to establish those factors that we've set out? In other words, where there has to be no other avenue of relief, and that the error renders the proceeding itself irregular and invalid. I don't recall those being the specific tests, I'll take your honor at your word if that's the test laid out. Assume for the moment they are part of the test for quorum nobis. We do recognize that we need to satisfy this court's jurisprudence in Peter as a result of the fact that we're on here on a quorum nobis petition. I guess what I'm asking are those factors, whatever they are, we don't need to agree on what they are, but whatever they are, are those jurisdictional? In other words, to meet them- For this court's jurisdiction. Exactly. For our subject matter jurisdiction to entertain a quorum nobis petition. I think that was the test that the district court needed to apply to determine whether or not it had subject matter jurisdiction. We believe that test was satisfied. The challenge that we're- But do you agree that they are subject matter jurisdiction tests? It is a test for subject matter jurisdiction, which the district court found- So I agree on your jurisdictional challenge, your extraterritorial jurisdiction challenge, you meet that. For the due process challenge, though, even the district court suggested in a footnote that it's kind of a close call on jurisdictional reasons, and you know that. And I just wonder if, why can't due process be brought up in a 2255 earlier for this defendant or any of the potential petitioners here? It's not a question of whether it could have been brought up earlier in a 2255, it's a question of whether or not the challenge is fundamental and it goes to the jurisdiction of the criminal court. Because if it is a fundamental jurisdictional challenge, then it's not waivable. So whether we could have brought it under a 22- The High Seize Clause one I agree with, but on due process, there's due process challenges all the time in post-conviction world. How is this one that meets that high jurisdictional bar to get to quorum nobis relief? Because one, it's based off of the record in front of the district court, which this court has held to be jurisdictional, that's one proxy for how you determine whether or not something is subject matter jurisdiction if it's based off of the record that was before the sentencing court. And two, more fundamentally, it is a challenge to the United States' power to criminalize this particular type of conduct, to convict these individual defendants of a federal crime, and we believe that under Peter, under the district court's ruling, notwithstanding the footnote that the district court dropped in there, we do believe that she did nevertheless find that even our due process challenge was a fundamental challenge that went to subject matter jurisdiction. And I would point out that, you know, having won that in the district court, I think the government certainly didn't raise that as an alternative basis for affirmance. Did not. But that's why I asked, if it goes to our subject, or the court's subject matter jurisdiction, we have an independent obligation to review that. Certainly, Your Honor. I do believe it goes to the district court's subject matter jurisdiction. Quite candidly, I haven't considered how it would affect this court's subject matter jurisdiction, and I see that my time is up, so. You've reserved some time for a rebuttal, and we'll look forward to hearing from you then. Thank you. Good morning. Good morning. Thank you. May it please the court, this is Jonathan Colon on behalf of the United States, and I want to thank the court and counsel for accommodating my appearance today. Everyone's been very helpful, and I do appreciate it. I'd like to go right to the conduct at issue here, because I think the counsel's made a point about whether that establishes something that is probably before the United States court. The conduct here they've stipulated was material false statements. This isn't just a, they make light of the fact of what their statement was, but the record clearly shows this was an MDLEA enforcement boarding that is plain from the record. They acknowledge that the Coast Guard was validly on board investigating and attempting to enforce the MDLEA, and that they've stipulated that their statements were material to that action and could affect the actions of the Coast Guard in carrying out their enforcement boarding duties. That is a key U.S. interest and key U.S. concern, and the Coast Guard can't just willy-nilly bring these prosecutions. The statute at issue only criminalizes false statements during a boarding, and the Coast Guard would only, can only be boarding when they are engaged in an otherwise valid U.S. enforcement action. In the case of a foreign flag vessel with the consent of the foreign flag nation, here not only is there consent, but there was a joint enforcement agreement, the bilateral agreement with Jamaica, entered into under the auspices of the U.N. Convention Against Illicit Traffic, setting up a multilateral enforcement regime to enforce and investigate drug trafficking on the high seas. The record shows that the Coast Guard observed these bails being tossed overboard from this vessel. The petitioners can see- Counsel, does this wind up trying to get to answering the argument or trying to say that the Gonzalez test, or meeting the protective principle or the universal principle, was met by the false statement count? And if it is, I can tell you that I'm a little skeptical of that, that a false statement about destination is something that is generally recognized as prohibited the universe over as being wrong under the law of nations. I'm having trouble bridging that gap if that's where you're headed. Our position is that both that it was satisfied and that it doesn't need to be. First, I'm going to address why I think it was, and then I'd like to explain why I think as Your Honor was pointing out, there are many ways to satisfy international law. And satisfying international law is only one of many ways to satisfy due process. But getting back to whether we do meet the protective principle, which is where the general condemnation prong comes in, under the protective principle, again, the conduct here was a material false statement affecting the enforcement of a U.S. law. Is it generally recognized that lying to a boarding law enforcement official who is properly on board your vessel investigating valid crimes that they are entitled to enforce? Because everyone acknowledges the Coast Guard had the right to board and the right to investigate, to enforce the MDLEA. So the general principle is, is it generally recognized that lying, material false statements to boarding law enforcement officials will result in criminal consequences? And I think the answer is yes. Counsel, I'd like to think that there is a universal consensus that you shouldn't lie in this circumstance. But I think that there's at least an obligation of the government or someone to establish that as a matter of international law. Whether it's setting out, here are the laws of 200 nations which condemn similar conduct. Whether it's some sort of treaty that's been signed on by 200 nations stating that we universally condemn this practice. But the fact that there's a treaty between Jamaica and the United States and that we have a lot of laws that prohibit false statements in this context, I'm having trouble getting how that is universally recognized as a general principle, even though it's done in connection with a drug investigation. As to the government's burden, I'd just like to point out that because this was a guilty plea in the original and underlying criminal prosecution under Iguaran, and this court has recognized that the government's requirement to establish the various jurisdictional hurdles don't arise until challenged. So it was challenged only later in this Corum Nobis prosecution. And as we said, the protective principle was one of many ways to satisfy due process. It wasn't even our primary argument. But to address it, not only we've shown that Jamaica itself has a law that would apply here if this is a joint enforcement operation, if Jamaican officials had themselves under the joint enforcement board of the vessel, the Jamaican maritime law would have applied and it would have been prosecutable in Jamaica. I want to address the argument they made in their reply brief that it wouldn't. The definitions of the territorial waters in various locations where Jamaica would be could, of course, enforce its laws on its own flagged vessel. So it's irrelevant that it wasn't in one of those defined territorial locations because this was a Jamaican flagged vessel. Of course, Jamaica has the right to enforce its laws under international law and its own laws to its own flagged vessel. Assume with me for the moment that I don't agree with you that you've met your obligation on the universal principle, the protective principle. Can you please address your opposing counsel's argument that on the territorial principle, our case law and case law of other circuits seem to suggest that consent isn't enough. In other words, you can't just create jurisdiction through a foreign jurisdiction's consent to enforce laws on its flagged vessels. Consent, this court has recognized, can't create an enumerated power. And it's very important to keep those separate prongs separate. First, we have to establish the government has enumerated power to prescribe the law. Second, does enforcing that law satisfy due process? And what this court's prior decisions have shown was that consent can't create an enumerated power where it doesn't otherwise exist. But clearly, this is on the high seas where the text of the Constitution gives Congress the power to define and punish felonies on the high seas, which this court recognized in Davila-Mendoza, citing Gibbons v. Ogden, said that the limits of the Constitution's powers are in the text. And so that's a separate issue. Consent can't create an enumerated power. But in satisfying the territorial principle, and not just the territorial principle, but also compliance with international treaty, I mean, consent could occur outside of a treaty. But in this case, we have both the consent of the flag nation, which has territorial rights over the vessel, and also a joint enforcement agreement entered into under the UN Convention, which is the multilateral treaty regime, all of which show that this is in compliance with international law. And compliance with international law, this court has recognized, satisfies due process. And that is in the case where there isn't a US nexus, which we also say satisfies due process, because here, even the 2237 prosecution is even stronger than the MDLEA. Because in a 2237 prosecution, you must show direct US interests. They were lying to US boarding officials during a US boarding, a valid US boarding law enforcement action aimed at enforcing a US law. Those lies are directed at the US, and are material to the US, and the position is stipulated affect the US boarding actions. That's a US nexus, even if the court were to adopt one in this case. So those are many ways of satisfying due process, both territorial prong, and compliance with international treaty, and the United States nexus, on top of what we think, still think is the protective principle here. Because not only does Jamaica criminalize these things, I grant your honor, and I apologize, we don't have a global survey, but generally recognized legal systems such as the United Kingdom, and Australia, this came up in the briefing of the First Circuit's en banc argument case in Eibar-Uloa, forgive me, your honor. Both Britain and Australia have similar laws criminalizing false statements to boarding officials. And to think that it's a trap for the unwary, that when people are boarded by law enforcement officials, such as the Coast Guard, who you acknowledge are there and validly enforcing the law, that providing a material false statement to them would not subject one to criminal prosecution. That is not a trap for the unwary. That is not arbitrary. And given the joint enforcement agreement and the global enforcement scheme, these are all reasonable actions related to the enforcement of valid US powers, both under the high seat. Is the quorum novus requirements that I talked about earlier, are they jurisdictional? Yes, your honor. But it's our position that they're satisfied here. I want to say that the reason that we believe that a 2255 action would not have been an alternative here is because the petitioners are not in custody. They have served their- Well, now they're not, but they were in custody. No. I'm sorry, your honor, I don't recall the specific date during the procedure when they have left custody, but the government has not raised that argument as you acknowledged. When we looked at it, we believe that the quorum novus petition itself procedure. Once the district court ruled and we had a chance to look at the way the district court had resolved the issue under Peter, we believe that that was sufficient. Let me ask this. Could the petitioners who were in custody at one point post a judgment in this case before they were deported and before they were released and while they were on supervised release, could they have raised in a 2255 the due process argument? I think so, your honor. Does that not call into question the jurisdiction, at least with regard to that argument? Frankly, your honor, I'm not sure I'm following your distinguishing of the enumerated power claim. I suppose the enumerated power claim we're saying is the jurisdictional aspect of it, and the due process isn't jurisdictional. Counsel, you made that very point yourself when you said that the analysis on consent, you can't consent to extraterritorial jurisdiction, but that's different from the due process issue, and I agree with you there's a distinction between those two. I'm sorry, your honor, what I was trying to say, I hope I'm not misstating it, is that you can't consent to an enumerated power. Due process would be a limit on the exercise of a US power, and I suppose I haven't parsed whether the due process limit on the exercise of an otherwise valid power is itself not jurisdictional. And I apologize that that framing of it had not occurred to me. If it's not going to the premise, addressing your premise, if a claim is not jurisdictional, then it can be waived, and then there would be a problem with the action. When we had looked at it, we were viewing their claims in total as addressing the jurisdiction of the court to try them for their offenses. And if it is all jurisdictional in that case, then, of course, it could be properly before the court. We seem to be arguing past each other in many ways in this case. The petitioners tried to discount that this was an MDLEA enforcement because of the fact that we didn't ultimately bring the charge under the MDLEA, although it was in the original criminal complaint. But all the time, obstruction-type cases are brought without necessarily bringing the underlying offense charge. It's a reason why obstruction-type offenses are crimes. They often prevent the bringing of the underlying charge, but there's no requirement. Your opposing counsel, though, in brief takes a big issue with that because you—I didn't count the words, but the use of the word obstruction appears a lot in the red brief. And in the gray brief, your opposing counsel, I think, correctly states this is not an obstruction case. There is a separate section of the statute which goes to obstruction. This is a false statement case. And that matters because while there may be international consensus on obstruction, there at least is less evidence that there's international consensus on making a false statement regarding destination. I've used the word obstructive—thank you. —various forms of obstructive conduct. In fact, as far as I recall, the word obstruction is not actually in the statute text itself. It's in the title. But all of these ways, whether it's failure to heave to, which this court has acknowledged in other MDLEA prosecutions—I mean, the same agreements that the petitioners say don't say we can prosecute for false statements don't say we can prosecute for failure to heave to. But when you acknowledge the Coast Guard's boarding authority, that boarding authority can be backed up by forcing them at force to stop, as actually had to happen in this case. They only stopped at gunpoint. Failure to heave to is a crime. It is preventing, it is interfering with the enforcement of the law. And in my general sense, I'm using the word obstructive conduct in the general sense, it is obstructing the enforcement of the MDLEA. Failure to heave to does that. Interfering with the Coast Guard's bodily interference would be obstructing the enforcement of the MDLEA. And here, they stipulate that these are material false statements that affect the decision making during the boarding action. That is obstructive conduct. And we refer to false statements as an obstruction enhancement at sentencing. So the language obstructive, I use in the general sense of impairing. And I don't mean to use it in any more technical sense than that. But petitioners can see that they were impairing a boarding action. And where it is acknowledged the Coast Guard has the valid authority to prescribe, when Congress has the authority to prescribe the MDLEA, and the Coast Guard has the authority to enforce the MDLEA, then Congress has the authority to prescribe material interference with that as a crime at sea. It complies with our joint enforcement agreements and other aspects of international law. And there is no trap for the unwary here in lying to boarding enforcement officials. Their convictions were valid. And the district court's decision denying the quorum nobis petition should be affirmed. Thank you. Thank you. Thank you very much. Very quickly. First of all, with respect to Jamaica law, it criminalizes obstruction. There is no evidence in the record, no proffer by the United States as to what actual conduct is considered obstruction under Jamaica law. The statute here is quite clear that there are two separate criminal provisions. 2237A1A criminalizes obstruction. 2237A2B criminalizes false statements. The petitioners were charged under the second provision, not under the obstruction provision. There's no evidence here of obstructive intent. There's case law in the 11th Circuit that false statements alone are not obstructive conduct. You need to show more than that. And there's no record evidence here to support a finding that the false statements here were The citation there is United States v. Thomas 916 F2D 647. With respect to the nexus, the United States argument is a self-fulfilling prophecy. Of course, a petitioner or defendant is going to be engaged in conduct that's violative of a federal statute or else there would be no prosecution. So it can't possibly be the case if the due process nexus requirement is to have any meaning whatsoever that merely violating the terms of a federal statute is enough to satisfy the nexus requirement. There needs to be defended created contacts. In Batson, the case your Honor recognized, the court found the contacts were legion. The defendant had a U.S. passport, a U.S. driver's license which he used to commit his crimes. There's no similar conduct here at all. There's no U.S. nexus here. It was entirely created by the Coast Guard. I want to point out with respect to the territorial principle, it would create a very weird situation where individuals who are on foreign flagged vessels have less due process rights than individuals on unflagged vessels. Because, of course, if you're on an unflagged vessel, there's no foreign state who can consent to your prosecution. So I just want to point that out. With respect to, I know I'm jumping around here a little bit. I apologize. With respect to the universal condemnation of the false statements crime here, this wasn't even a crime in the United States until 2006. There's no evidence that it's a crime anywhere else in the world, and we submit that under the due process clause, that matters. I also want to point out that there, well, never mind. I see that my time is running out. Oh, quickly, with respect to the jurisdictional question that your Honor is raising, I would direct you to the Alcoron case. It was one of the cases that was part of the supplemental authority letters. It's a case from the Second Circuit, 972 F3D 156. And that court also discusses a Supreme Court case. I apologize. I don't have the citation. It's the class case. In footnote four in Alcoron, the Second Circuit notes that we noted in Vander End that this type of due process challenge, the same type of due process challenge that we're making here, is a purely legal question on which the government's constitutional power to prosecute the defendant turns. And therefore, we may consider the argument in spite of the defendant's unconditional guilty plea. I submit it's not on all fours, but I think it's close enough and it addresses your Honor's jurisdictional question. And finally, I just want to wrap up by saying this. As far as we're aware, and the United States has certainly not come forward with anything to the contrary, there has never been a single case that has relied purely, purely on a foreign nation's consent to justify a prosecution under the due process clause. When you have a conduct here that is not universally criminalized, it's not criminalized by all reasonably developed legal systems, and I would urge this court not to be the first to make that holding. I think that has very, very dangerous ramifications going forward. Unless the court has any other questions, we would otherwise rest on our papers and we would ask that the petitioner's convictions be vacated. Thank you so much. We appreciate the presentation and we have your case. Thank you. I know our . . . Jonathan needs a minute to . . . Could I get our court security officer to come up here and answer a question for me? Thank you. Hang on just a minute. I want to get our . . . We apologize to our spectators. We can't, because of the six feet apart, we can't accommodate anybody, but I think we've got everybody in the courtroom now who wanted to observe this proceeding and welcome.